**Christine PLEMER, Plaintiff-Appellant,**

v.

**PARSONS–GILBANE, etc., et al., Defendants-Appellees.**

**No. 81–3464.**

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1983.

George M. Strickler, Jr., New Orleans, La., for plaintiff-appellant.

McCalla, Thompson, Pyburn & Ridley, Susan L. Brooks, Stephen D. Ridley, New Orleans, La., for defendants-appellees.

Before GARZA, REAVLEY, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

In this Title VII and Equal Pay Act suit, the district court rendered judgment for the defendants-appellees Parsons-Gilbane and also ordered that plaintiff-appellant Plemer pay the appellees' attorneys' fees. We reverse the award of attorneys' fees, and affirm in part, and reverse and remand in part, the remainder of the district court's judgment.

Parsons-Gilbane is a joint venture between the Ralph M. Parsons Company and the Gilbane Building Company. A prime contractor to the United States Department of Energy, Parsons-Gilbane constructs underground storage facilities in Louisiana and Texas for the Strategic Petroleum Reserve Program. As a federal contractor, Parsons-Gilbane must comply with Executive Order 11246,[1] as well as with other federal employment laws.

Christine Plemer began working for Parsons-Gilbane in May 1978 as a Personnel Assistant. Her starting salary was $1,167 per month. In October 1978, Parsons-Gilbane promoted Plemer to the position of Equal Employment Opportunity ("EEO") Representative and increased her salary to $1,375 per month. As EEO Representative, Plemer was charged with helping to secure compliance with federal employment regulations, participating in a salary review committee, receiving and processing individual employees' EEO grievances, and preparing material for fact-finding conferences.

As EEO Representative, Plemer reported to the EEO Officer. From October 1978 until June 1979, no one held the position of full-time EEO Officer. From October 1978 until December 1978, Charles Orne held the position part time, and Walter Marquadt held it part time from the end of January 1979 until June 1979. No one held the position of EEO Officer in January 1979, and during the period from October 1978 until June 1979, Plemer was the only full-time employee whose primary duty was to secure compliance with Equal Employment Opportunity laws.

In April 1979, Parsons-Gilbane decided to create a position for a full-time EEO Officer. Plemer applied for the position and had the endorsement of both a caucus of employees and an Office of Federal Contract Compliance Programs officer who had investigated Parsons-Gilbane. In June 1979, Parsons-Gilbane hired a male, William Willis, for the position. Willis' salary was set at $2,167 per month.

On August 7, 1979, Plemer submitted her resignation to Parsons-Gilbane, effective August 21, 1979. Plemer felt Parsons-Gilbane had discriminated against her because of her sex by passing over her in favor of

---

1. Executive Order 11246, promulgated by President Johnson in 1965, requires that government contracts contain provisions against employment discrimination, including a statement that "[t]he contractor will not discriminate against any employee ... for employment because of race, creed, color, or national origin." Section 202. Executive Order 11375, issued on October 17, 1967, added the requirement that the contractor state that it will not discriminate on the basis of sex. Sections 201 and 205–08 of Executive Order 11246 make the Secretary of Labor responsible for compliance with the Order and give the Secretary the power to investigate contractors to evaluate their compliance with the Order.

Willis for the position of EEO Officer. Her letter of resignation stated that her "situation is a direct result of discriminatory employment and pay practices of the Joint-Venture. For these reasons, I can no longer offer my services to an organization which continually exhibits unfair personnel practices." When she resigned, Plemer was given a five percent raise to $1,444 per month, which was made retroactive to May 24, 1979.

Parsons-Gilbane hired a male, William Biggs, to replace Plemer as EEO Representative. Biggs' starting salary was $1,542 per month, 6.8 percent greater than Plemer's final monthly salary of $1,444. When Biggs resigned, Parsons-Gilbane promoted Eleanor Washington from within the Company to replace him. Her starting salary as EEO Representative was $1,406 per month, 8.8 percent lower than Biggs' starting salary.

On October 16, 1979, Plemer filed a charge with the EEOC alleging that Parsons-Gilbane had discriminated against her because of her sex by failing to promote her to EEO Officer, by paying her less than it paid Willis or Biggs, and by forcing her constructive discharge. Plemer sued Parsons-Gilbane within 180 days of receiving her right-to-sue letter from the EEOC. The district court gave judgment for the defendants on each claim and, finding the claims to be frivolous, awarded attorneys' fees to Parsons-Gilbane.

Plemer does not appeal the district court's determination that Parsons-Gilbane's failure to promote her was not discriminatory, nor does she appeal the district

court's holding against her on her constructive discharge claim. She does assert that the district court erred in awarding Parsons-Gilbane its attorneys' fees, and she contends that the court erred in finding no merit to her claim of discriminatory compensation. We first address the points concerning her compensation claim and then consider the attorneys' fees question.

## PLEMER'S COMPENSATION CLAIM UNDER TITLE VII AND *GUNTHER*

Before the Supreme Court decided *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), this Court required that a plaintiff alleging discrimination in pay under Title VII[2] meet the standards of proof of the Equal Pay Act,[3] and show that he or she was being paid less than an employee of the opposite sex for performing equal, or substantially equal, work. *See, e.g., Orr v. Frank R. MacNeill & Son,* 511 F.2d 166, 171 (5th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975).

The Supreme Court in *Gunther,* however, determined that failure to allege or prove the equal work standard of the Equal Pay Act did not bar a plaintiff's cause of action under Title VII for discrimination in compensation.

At trial, Plemer attempted to prove two compensation causes of action. The first was a claim that she had received unequal pay for equal work. To establish this "classic" type cause of action for discrimination in compensation,[4] Plemer compared her po-

---

2. Title VII, 42 U.S.C. § 2000e–2(a) makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his *compensation,* terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex,* or national origin...." (Emphasis added.)

3. The Equal Pay Act, 29 U.S.C. § 206(d)(1) provides in part:
 "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to

employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex...."

4. For convenience of presentation, we will refer in this opinion to claims in which a plaintiff asserts she was performing equal work for unequal compensation as a "classic" equal pay claim.

sition and salary to those of her successor, Biggs. This first cause of action arose under both the Equal Pay Act and Title VII. Her second cause of action arose under the *Gunther* theory, that Parsons-Gilbane had intentionally discriminated against her in compensation by paying her less than her job was worth because she was female. This second cause of action arose exclusively under Title VII. Although on appeal Plemer makes several points as to each of these two compensation causes of action, we initially discuss her assertion that the district court's failure to make findings under the *Gunther* theory was reversible error.[5] To determine the merit of this assertion, we must, of course, look closely at the Supreme Court's *Gunther* opinion.

In *Gunther,* a group of female prison guards charged that the County had violated Title VII by intentionally depressing their wages because of their sex; that the County had set "the wage scale for female guards, but not for male guards, at a level lower than its own survey of outside markets and the worth of the jobs warranted." *Id.* at 166, 101 S.Ct. at 2246, 68 L.Ed.2d at 758. The plaintiffs had failed to prove that they performed jobs which required equal skill, effort, and responsibility as the jobs the male guards performed. The female guards, therefore, did not assert an equal pay for equal work claim before the Supreme Court. Instead, the appeal concerned the plaintiffs' allegation that a cause of action under Title VII had arisen because their employer had intentionally discriminated against them with respect to their compensation. The Supreme Court explained: "The sole issue we decide is whether [the female guards'] failure to satisfy the equal work standard of the Equal Pay Act in itself precludes their proceeding under Title VII." *Id.* at 166 n. 8, 101 S.Ct. at 2246 n. 8, 68 L.Ed.2d at 758 n. 8.

The County premised its defense on the application of the Bennett Amendment which states that Title VII does not make illegal those disparities in pay which the Equal Pay Act authorizes. The Equal Pay Act, 29 U.S.C. § 206(d), in turn, requires that equal wages be paid to men and women performing work "which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, *except* where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." (Emphasis added.) The County had argued that the Bennett Amendment had incorporated the entire Equal Pay Act, rather than only its four exceptions, into Title VII and that, therefore, a plaintiff with a Title VII sex discrimination in compensation claim could only succeed on the claim by offering proof under the unequal pay for equal work standard. The Court found otherwise. *Id.* at 181, 101 S.Ct. at 2253, 68 L.Ed.2d at 767.

After examining the legislative histories of both the Bennett Amendment and the Equal Pay Act, the Court determined that the Amendment had only incorporated into Title VII the Equal Pay Act's four exceptions or defenses, and not its requirement that a plaintiff allege or prove she was performing equal work for unequal compensation. Therefore, a cause of action for discriminatory compensation based on sex could arise under Title VII even if a plaintiff did not allege unequal pay for equal work. The Court specifically declined to decide "the precise contours of lawsuits challenging sex discrimination in compensation under Title VII." *Id.* at 181, 101 S.Ct. at 2254, 68 L.Ed.2d at 767. To a limited extent, we must define those contours today. We do not decide precisely what the

---

5. Parsons-Gilbane argues that Plemer did not urge a *Gunther* claim at trial and should not be allowed to put forth that claim on appeal. Although Plemer did not allege a *Gunther* cause of action in her complaint, the pretrial order, signed by counsel for both parties, contained a *Gunther* claim: "Plaintiff was paid less than she would have been paid, had she been male,

during her entire tenure at Parsons-Gilbane, or at least since she became EEO Representative." In addition, Parsons-Gilbane addressed the *Gunther* issue in its pretrial memorandum. We believe that the *Gunther* issue was tried by the implied consent of the parties. Fed.R.Civ.P. 15(b). 5 C. Wright and A. Miller, Federal Practice and Procedure § 1219 at 143 (1969).

contours are, but we do determine that Plemer's claim does not fit within them.

A detailed study of *Gunther* convinces us that Plemer's charge does not fall within its confines. In the case before the Supreme Court, the plaintiffs had offered the clearest of evidence of discrimination. The County of Washington had evaluated the worths of the jobs of the male and female guards and had determined that because their duties differed, the female guards should be paid 95 percent as much as the male guards. Although the County paid the male guards the full worth of their jobs, it paid the women only 70 percent, rather than 95 percent, as much as the males. The women alleged that the County's failure to pay them the full evaluated worth of their jobs was attributable to intentional sex discrimination.

The Court's opinion refers continually to the uniqueness of the plaintiffs' claim and to the strength of the evidence they had offered. The beginning of the opinion explained that the plaintiffs' claim had nothing to do with the controversial comparable worth doctrine. Instead the plaintiffs sought "to prove, by *direct evidence,* that their wages were depressed because of intentional sex discrimination, consisting of setting the wage scale for female guards, but not for male guards, at a level lower than its own survey of outside markets and the worth of the jobs warranted." *Id.* at 166, 101 S.Ct. at 2246, 68 L.Ed.2d at 758 (emphasis added).

In concluding its opinion, the Court addressed the employer's fears that allowing Title VII suits for discriminatory compensation to be brought by plaintiffs who did not allege that they were receiving unequal pay for equal work would place " 'the pay structure of virtually every employer and the entire economy ... at risk and subject to scrutiny by the federal courts' " because " 'Title VII plaintiffs could draw any type of comparison imaginable concerning job duties and pay between any job predominantly performed by women and any job predominantly performed by men.' " *Id.* at 180, 101 S.Ct. at 2253, 68 L.Ed.2d at 767. But, the Court explained, the employer's fears were unjustified in this instance in which the plaintiffs had offered hard evidence that the employer, having determined that the female guards should be paid 95 percent as much as the male guards because their duties differed, still paid the women only 70 percent as much. "Thus, [the] suit does not require a court to make its own subjective assessment of the value of the male and female guard jobs, or to attempt by statistical technique or other method to quantify the effect of sex discrimination on the wage rates." *Id.* at 181, 101 S.Ct. at 2253–54, 68 L.Ed.2d at 767 (footnote omitted).

Enlightening also are the Court's examples of the unjustifiable practical effects of a holding that a plaintiff would have no Title VII claim unless she could allege that she was being paid unequally for performing equal work—no cause of action would lie for a woman who held a unique position in a company which admitted it would pay her more if she were male, or for a woman who had a job not equal to any held by males in a company which operated a transparently sex-biased system for wage determination. Those examples persuade us that the Court was concerned with blatant cases of sex discrimination in which the only stumbling block to underpaid females' causes of action was the fact that the victimized women did not hold jobs similar to those held by men.

Plemer's case does not fit within these limitations which we infer that the Supreme Court placed upon *Gunther*-based suits. Plemer has shown no transparently sex-biased system for wage determination. Nor has she offered any direct evidence (other than that which she offers in support of her "classic" equal pay claim, discussed *infra*) that Parsons-Gilbane paid her less than it would have had she been male. This alone distinguishes her situation from the one in *Gunther.* In *Wilkins v. University of Houston,* 654 F.2d 388 (5th Cir.1981), *vacated and remanded,* —— U.S. ——, 103 S.Ct. 34, 74 L.Ed.2d 47 (1982), *aff'd on remand,* 695 F.2d 134 (5th Cir.1983), in which this Court considered a *Gunther* claim, the plaintiffs produced the type of

direct evidence discussed in *Gunther.* The plaintiffs in *Wilkins* showed that the University had established a pay structure which prescribed the lowest and highest salaries which should be paid for each employee position, and that eighteen of the twenty-one persons who were being paid less than the "low figure" were women.

Rather than offering the type of direct evidence that had been before the Courts in *Gunther* and *Wilkins,* Plemer attempts to make out her *Gunther* claim by comparing her job to that of EEO Officer William Willis. She makes no claim under the comparable worth doctrine; *i.e.,* she does not claim that she and Willis performed different duties which were worth comparable amounts. Instead, she attempts to show the actual overlap of their duties. Plemer then asks us to infer that the dissimilarities between their two jobs are not worth the almost $8,700 per year disparity in their salaries; that although their duties are not equal, the ratio of Willis' duties to Plemer's is out of sync with the ratio of his salary ($2,167 per month) to hers ($1,444 per month). Because Willis' and Plemer's duties are not sufficiently dissimilar in comparison to the differential in salary, Plemer asserts, it should be found that the salary disparity was attributable to sex.

Plemer asks too much. She would have the courts make an essentially subjective assessment of the value of the differing duties and responsibilities of the positions of Plemer and Willis and then determine whether Plemer was paid less than the value of her position because she was female. If Plemer had shown that the Company had placed those values on her and Willis' respective duties and responsibilities and were paying Willis the full value while paying Plemer less than her evaluated worth, her claims could be considered. It is not the province of the courts, however, to value the relative worth of Plemer's and Willis' differing duties and responsibilities, given the absence of either evidence of a kind similar to that delineated in *Wilkins,* or any direct or otherwise clear evidence as to how the Company valued the positions.

Because Plemer's claims do not fit within the cause of action delineated by the Supreme Court in *Gunther,* the district court's failure to make *Gunther* findings was not reversible error.

## PLEMER'S CLASSIC EQUAL PAY CLAIM

Statistical Evidence.

Plemer also alleged that because her male successor, William Biggs, was paid more than she had been, Parsons-Gilbane violated both the Equal Pay Act and Title VII in the classic sense—by paying unequal salaries for equal work. In support of her claim, Plemer offered, and the district court admitted into evidence, statistics regarding disparities between men's and women's salaries in white-collar departments at Parsons-Gilbane.

Although the statistics only showed raw data about the salaries of the workers in the white-collar departments and did not include variables which might reflect on salary such as education, prior experience, and seniority, the statistics did tend to show that women at Parsons-Gilbane were generally on the bottom rung of the pay ladder.

The district court admitted these statistics into evidence but refused to consider them. The court stated:

"Plaintiff relies on statistics indicating what she contends to be widespread discrimination by defendant against females based upon their sex. Assuming *arguendo* that the statistics do so indicate, this would avail plaintiff nothing in the absence of proof of discrimination against her. We have already concluded that there is absolutely no evidence of discrimination against her. Thus it is of no consequence that the defendant may discriminate generally against females on account of their sex. Stated differently, if plaintiff proved that she had been discriminated against in her employment, she could rely upon the statistics to support her claim that the basis for the discrimination was sex rather than some other reason, e.g., a personal dislike by her supervisor. In the absence of proof of discrimination against plaintiff, the

statistics are irrelevant." District Court Op. at 3 (citations and footnotes omitted). Plemer argues that the district court erred in refusing to consider the statistics. She asserts that the court should have admitted the statistics as part of her *prima facie* case and to allow her a full opportunity to rebut Parsons-Gilbane's asserted justification for the salary disparity. Agreeing with the latter contention, and finding it unnecessary to address the former, we reverse and remand, and instruct the district court to consider the statistics.

Plemer brings her equal pay for equal work claim under both Title VII and the Equal Pay Act. This is neither unusual nor inappropriate, but it requires that we examine the elements and burdens of proof under both statutes to determine how Plemer's statistical evidence fits into her proof of her claim.

Plemer's cause of action alleges individual, disparate treatment under Title VII. She does not assert a disparate impact claim: she makes no allegation that a Parsons-Gilbane policy which was gender-neutral on its face had a discriminatory disparate impact on women. Instead, she simply alleges that she was the victim of Parsons-Gilbane's disparate treatment which consisted of paying her a lower wage than her successor.

■ Although in disparate impact cases, the plaintiff is not required to prove that an employer intended to discriminate, *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 163 (1971), the plaintiff is required to prove intent in a disparate treatment case. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967 (1978); *Johnson v. Uncle Ben's, Inc.,* 657 F.2d 750, 753 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982). Because the plaintiff frequently finds it an impossible or most difficult task to produce direct evidence of an employer's intent to discriminate, the Supreme Court has set out the *prima facie* case the plaintiff must prove, from which a court may infer intentional discrimination.

■ In, for instance, a suit alleging sex discrimination in an employer's failure to hire or promote, the plaintiff generally must prove (1) that she was a member of a protected group, (2) that she applied for a position for which she was qualified, (3) that she was rejected, and (4) that after she was rejected, the position remained open and the employer continued to seek applications from persons with the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973).

The plaintiff may also, however, use other methods of proof from which a court may infer the employer's intent to discriminate. As the Supreme Court noted when it laid out the aforementioned elements of a *prima facie* case, "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing situations." *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed.2d at 677–78 n. 13.[6] The plaintiff may introduce in an individual disparate treatment case statistics evidencing an employer's pattern and practice of discriminatory conduct, which "may be helpful to a determination of whether" the alleged discriminatory act against the plaintiff "conformed to a general pattern of discrimination against" members of a protected group. *Id.* at 805, 93 S.Ct. at 1825, 36 L.Ed.2d at 679. Although statistics are "of probative value in an individual discrimination case for the purpose of showing motive, intent, or purpose," that evidence is "not determinative of an employer's reason for the action taken against the individual grievant." *Terrell v. Feldstein Co.,* 468 F.2d 910, 911 (5th Cir.1972).

■ It may well be questionable whether in an action grounded on a classic unequal pay for equal work claim, such statistics could ever suffice to make a *prima facie*

---

**6.** We do not suggest that this language means that the only variations in the elements of a *prima facie* case, to fit the differing circumstances of divergent factual patterns, are variations which reduce the proof the plaintiff must make.

case, if the proofs were otherwise insufficient, for purposes of an individual Equal Pay Act or Title VII disparate treatment suit. However, we need not decide that question, either in the abstract or as applied to Plemer's suit, because we hold that Plemer's evidence, *apart* from the statistics, *did* make a *prima facie* case under both the Equal Pay Act and Title VII, by demonstrating that she was paid less than her male successor, Biggs, for the identical position. The statistics were therefore relevant, and should have been considered by the district court, in determining whether Parsons-Gilbane's asserted justification for this differential was pretextual.

As explained earlier, Title VII prohibits, among other things, discrimination in compensation based on sex, and the Bennett Amendment, in turn, incorporates the four exceptions of the Equal Pay Act into Title VII. Those exceptions allow disparities where

> "payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

Disparities allowed by these exceptions are not illegal under Title VII, and if an employer's actions fit within one of these exceptions, the employer has a good defense to a Title VII suit alleging unequal pay for equal work, as well as to an Equal Pay Act suit.

■ In a Title VII case, the plaintiff must first make out a *prima facie* case. The *prima facie* case will create a presumption that the employer discriminated against the employee. "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981).

The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory action. *Id.* At this point, the Title VII defendant does not have the burden of persuasion; it "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (Citation and footnote omitted.)

If the defendant carries this burden, the plaintiff then bears the "ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. In a Title VII case, the burden of persuasion always remains with the plaintiff.

■ Under the Equal Pay Act, however, the burden of persuasion may shift from the plaintiff to the defendant. The plaintiff's having made out a *prima facie* case has different ramifications under the Equal Pay Act than it has under Title VII. Under the Equal Pay Act, the plaintiff has the burden of proof to "show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974). If the plaintiff meets this burden, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Id.* at 196, 94 S.Ct. at 2229, 41 L.Ed.2d at 11. The exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion. *Id.* at 197, 94 S.Ct. at 2229, 41 L.Ed.2d at 11. In other words, the burden shifts to the employer once a plaintiff shows that she was paid less than a male who was performing substantially the same job.

Plemer made out a *prima facie* case. She proved that when she resigned as EEO Representative, she was being paid $1,444 per month (this included a five percent raise over her salary of $1,375 per month, given upon her resignation and made retroactive to May 1979). Her successor, William Biggs, was paid $1,542, 6.8 percent more than Plemer was paid, including her raise. Biggs filled Plemer's shoes. Parsons-Gilbane never suggested that Plemer and Biggs had not performed identical jobs. In an Equal Pay Act claim, a plaintiff may make her case by comparing her salary to that of her successor. *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071, 1074 (5th Cir.1981). *See also Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 64 (5th Cir.1980) (plaintiff made out *prima facie* case by comparing her salary to her predecessor's). By showing that she was paid less than Biggs for performing the same job, Plemer made out a *prima facie* case under the Equal Pay Act. This evidence also sufficed to make out a *prima facie* compensation case under Title VII.

The burden then shifted to Parsons-Gilbane to show that the salary disparity fell within one of the exceptions delineated by the Equal Pay Act.[7] Parsons-Gilbane attempted to prove that the salary disparity fell within the fourth exception; that it was based on a "factor other than sex." Parsons-Gilbane introduced evidence that Biggs had had more experience than Plemer, that Parsons-Gilbane had had to lure Biggs from outside the Company, and that although Parsons-Gilbane paid him 6.8 percent more than Plemer, Biggs had taken a substantial salary cut to come to Parsons-Gilbane.

The district court should have considered Plemer's statistics as evidence

rebutting Parsons-Gilbane's proof that the disparity between Plemer's and Biggs' salaries was based on a "factor other than sex." The Supreme Court has required that a plaintiff be given a "full and fair opportunity to demonstrate" that a defendant's articulated justifications for discrimination are merely pretextual. "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. An employee may use statistics to show that an employer's justification for a discriminatory act is pretext.[8] *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1825, 36 L.Ed.2d at 679. If an employee establishes by statistics that an employer had a discriminatory practice or policy toward employees of the claimant's gender, the court may infer that the employer's justification for an action it took against the plaintiff was merely pretext and that the action was really taken on the basis of the plaintiff's gender in conformance with the general practice of discrimination. By refusing to consider Plemer's statistics, the district court denied Plemer her full and fair opportunity to demonstrate that Parsons-Gilbane's reasons for the salary disparity were mere pretext. The court's denial of that opportunity was reversible error.

On remand, we direct the district court to consider Plemer's statistics. We do not suggest that the court must find them persuasive. The statistics appear to be raw data showing that women at Parsons-Gilbane are generally not paid as much as men. We have, however, cautioned more than once that "a number of factors operate

---

7. We have no occasion to consider whether there are circumstances in which the Title VII defenses might be broader than those under the Equal Pay Act in a classic unequal pay for equal work suit. Here, Parsons-Gilbane does not raise any different defenses under Title VII than under the Equal Pay Act.

8. We recognize that the Supreme Court has articulated its standards regarding pretext and

the use of statistics to prove pretext in Title VII cases which did not involve claims of unequal pay for equal work. Nonetheless, the standards must apply in Equal Pay Act cases. If a plaintiff were given no full and fair opportunity to rebut an employer's evidence that salary disparities were based on a "factor other than sex," a plaintiff would be denied the opportunity to fully make out her case.

simultaneously to influence the amount of salary [an employee] receives." *Pouncy v. Prudential Insurance Co.,* 668 F.2d 795, 803 (5th Cir.1982); *Wilkins v. University of Houston,* 654 F.2d 388, 402 (5th Cir.1981), *vacated and remanded,* —— U.S. ——, 103 S.Ct. 34, 74 L.Ed.2d 47 (1982), *aff'd on remand,* 695 F.2d 134 (5th Cir.1983).

■ "Different job levels, different skill levels, previous training and experience: all may account for unequal salaries in an environment free from discrimination." *Pouncy,* 668 F.2d at 803. The district court is still free to evaluate the evidence and determine its probative value, to take into consideration what factors are accounted for in the statistical analysis. We recently explained that "[plaintiff] has the burden to give her raw statistics relevance and meaning by accounting for basic factors likely to affect the evidence's probative value." *Hill v. K-Mart Corp.,* 699 F.2d 776, 780–81 (5th Cir.1983). *See also Pegues v. Mississippi State Employment Service,* 699 F.2d 760, 766 (5th Cir.1983). No recognized statistical tests to show significance appear to have been performed on Plemer's statistics. *See Pegues,* 699 F.2d at 764–67. At trial, Parsons-Gilbane also introduced testimony to explain the disparities shown through the statistics and Plemer attempted to rebut Parsons-Gilbane's evidence.[9] Because the district court did not consider Plemer's statistics, it never evaluated Parsons-Gilbane's rebuttal evidence. On remand, the court should, of course, do so.

■ In sum, although the district court admitted the statistical evidence, the court erred in refusing to consider the evidence. Because it did not consider the evidence, the court did not pass on its probative value on its face or in light of both Parsons-Gilbane's explanations for the disparities and Plemer's rebuttal of those explanations. As an appellate court, we may not consider this evidence in the first instance. 9 C. Wright and A. Miller, Federal Practice & Procedure § 2577 at 699 (1971). The district court is

directed on remand to consider this evidence and make new findings respecting Plemer's classic equal pay claim.

"Findings" by the Office of Federal Contract Compliance Programs.

In 1979, Henry Edwards, then an Equal Opportunity Specialist for the Office of Federal Contract Compliance Programs ("OFCCP"), performed a compliance review of Parsons-Gilbane. The purpose of his review was to determine whether Parsons-Gilbane was in compliance with federal Executive Orders prohibiting employment discrimination by federal contractors. *See* note 1, *supra.* As a product of that review, Edwards made written findings which Plemer offered into evidence. She also offered a document concerning the OFCCP's investigation of a complaint by Glenda Perez that she had been the victim of sex discrimination.

After a lengthy interchange with both parties' attorneys, the district court determined that the documents were irrelevant and therefore inadmissible. Plemer challenges the district court's refusal to admit the documents.

The documents the district court refused to admit are labeled Proffer 1 and Proffer 2. Proffer 2 is a photocopy of a "Notification of Results of Investigation" and is signed by the Acting Assistant Regional Administrator of the OFCCP. Addressed to both Perez and Parsons-Gilbane, this letter speaks to Perez's complaints that she had been harassed, intimidated, and paid a salary lower than that paid to males with similar jobs. The letter states that the salary "is appraised as discriminatory" but that a conciliation agreement between Parsons-Gilbane and the OFCCP had resolved the issues of the complaint.

■ We believe the court acted within its discretion in refusing to admit this document. Although evidence that a pattern or

---

**9.** To rebut the statistics as to salary discrimination, Parsons-Gilbane offered the testimony of Mona Amis, Personnel Manager at Parsons-Gilbane, that the salary disparities in all departments were based on factors other than sex.

On cross-examination, Amis admitted that the salaries about which she had testified had been set before she began working for Parsons-Gilbane.

practice of discrimination existed at Parsons-Gilbane would have been relevant to Plemer's individual discrimination suit, *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1825, 36 L.Ed.2d at 679, an administrative settlement appraisal such as Proffer 2 that one woman, Perez, received a discriminatory salary does not persuasively tend to show that Plemer was also being paid disparately.[10] *Goff v. Continental Oil Co.,* 678 F.2d 593, 597 (5th Cir.1982). We have held that "[t]he district court has wide discretion on matters of relevancy and materiality of evidence." *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1375 (5th Cir.1981); *United States v. Grimm,* 568 F.2d 1136, 1138 (5th Cir.1978). Though theoretically this evidence had some attenuated relevance, its exclusion was not an "abuse of the discretion given the district court under Federal Rules of Evidence 403." *Lee v. Macon County Board of Education,* 650 F.2d 608, 610 (5th Cir.1981). *See also Miller,* 650 F.2d at 1375; *Wilson v. Sealtest Foods Division of Kraftco Corp.,* 501 F.2d 84, 87 (5th Cir.1974).[11]

The second document rejected by the district court, Proffer 1, is a lengthy letter from the OFCCP Area Director, Curtis Sims, to Mr. Melvin L. Polacek, Construction Executive at Parsons-Gilbane. The letter gives "official notice of the on-site compliance review deficiencies uncovered at Parsons-Gilbane. . . ." It then lays out seventeen pages of deficiencies and corrective action to be taken.

The exact nature of this document is unclear. Although Plemer offered it as "class type evidence" of discriminatory wage disparities between males and females in other departments, Parsons-Gilbane argues that the claimed findings "were simply a suggestion of probable cause to suspect that some of the pay differences in departments other than plaintiff's, may be discriminatory under the Equal Pay Act."

On remand, the district court will need to determine the exact nature of these OFCCP "findings." If the Agency considered the "findings" to be conclusive and final, the district court should not reject them on relevancy grounds. If they show widespread unjustified discrimination in compensation, they are relevant in the same manner as were the statistics—as evidence tending to show that Parsons-Gilbane's justifications for the disparity in Plemer's and Biggs' salaries were pretextual. Unlike evidence of an administrative settlement appraisal concerning only a single incident respecting one employee in a different classification, it would be an abuse of discretion for the district court to wholly refuse to give any consideration whatever to evidence relating to the general practices of the defendant on Rule 403 confusion of issues, undue delay or related grounds.

---

**10.** One of Plemer's charges at trial, but not on appeal, was that she was constructively discharged; that Parsons-Gilbane deliberately made her working conditions so intolerable that she was forced to resign. *See Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61 (5th Cir.1980). In attempting to prove this theory, Plemer introduced testimony that Perez had complained about her low salary but that when Plemer brought Perez's situation to the Company's attention, Parsons-Gilbane refused to rectify the situation. Plemer may have introduced the document describing OFCCP's appraisal as to Perez to show that the complaint Plemer had made to Parsons-Gilbane regarding Perez was legitimate. If this was the document's purpose, it is immaterial to Plemer's equal pay claim. She does not appeal the denial of her constructive discharge claim.

**11.** As a noted authority has observed, a major reason for excluding this character of evidence is that, in attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross examination and impeachment may lead to further issues; and that thus the trial will be unduly prolonged . . . ." 2 Wigmore, Evidence § 443 at 528–29 (Chadbourn rev. 1979). The same authority recommends that resolution of these matters be committed to the trial court's discretion. *Id.* at § 444. *See also United States v. Gleason,* 616 F.2d 2, 22 (2d Cir.1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980) (". . . where such proof, though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues the trial judge may properly reject or limit it" under Rule 403).

Other rationales for rejecting the document may exist and we do not speak to them at this time. We note that Henry Edwards, the Equal Opportunity Specialist who conducted the compliance investigation, testified that the document was not final. Also, unexplained handwritten comments line the margins of each page. The district court should be apprised of who wrote them and why, their significance, and their connection to the finality of the document. If the document is not sufficiently final, it may not constitute a "factual finding," or may be considered untrustworthy, under the exception to the hearsay rule in Fed.R.Evid. 803(8)(C).[12] In any case, from our limited knowledge of the character and contents of Proffer 1, we believe it was not *irrelevant* to Plemer's attempt to prove pretext in her equal pay case. We do not require that on remand the district court admit the evidence. We simply hold that if Plemer again offers the document, the district court should not refuse to admit it on relevancy grounds.

Plemer also challenges the district court's findings in several respects. She asserts that the district court's findings that the disparity in salaries was due in part to inflation and to Parsons-Gilbane's setting salaries with reference to the employees' previous experience were clearly erroneous. She also complains of the district court's determination that Parsons-Gilbane's having based salaries in part on the individuals' previous salaries was nondiscriminatory. Because we are remanding this case for the district court to make new findings after considering the statistical evidence, we find it unnecessary to address these contentions, other than to observe that the evidence cited in support of them is not such, under this record, as to authorize us to render judgment for Plemer.

## ATTORNEYS' FEES

 Stating that Plemer's "claims are simply frivolous; there is no evidence to support any of them," the district court awarded attorneys' fees to Parsons-Gilbane. The district court's finding that Plemer's "claims [had] no foundation in law or fact and [were] frivolous," was wrong as a matter of law. *Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1248 (5th Cir.1981). Accordingly, we reverse the award of attorneys' fees to Parsons-Gilbane.

Section 2000e–5(k) of Title 42 of the U.S. Code provides that in any action brought under Title VII, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." The fees may be awarded to a prevailing defendant. *E.E.O.C. v. First Alabama Bank*, 595 F.2d 1050, 1056 (5th Cir.1979).

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Court laid out the standards for awarding attorneys' fees to a prevailing defendant:

> "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.* at 422, 98 S.Ct. at 701, 54 L.Ed.2d at 657 (footnote omitted).

This Court has explained that under *Christiansburg*, to determine whether a suit is frivolous, a court must ask whether "the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Jones v. Texas Tech University*,

---

**12.** Rule 803(8)(C) provides that the hearsay rule does not exclude "in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The Advisory Committee's Notes on Proposed Rules state that factors which may be considered in passing on the admissibility of these reports include (1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held and the level at which conducted, and (4) possible motivation problems.

656 F.2d 1137, 1145 (5th Cir.1981). The district court's determination that Plemer's suit was frivolous was based on its failure to recognize the *prima facie* case which Plemer made out and on its failure to consider the statistical evidence Plemer proffered.

At the trial Plemer made four claims: (1) that she had been denied promotion to EEO Officer because of her sex; (2) that, under *Gunther,* Parsons-Gilbane had intentionally underpaid her because of her sex; (3) that, because of her sex, she had received unequal compensation for equal work; and (4) that she had been constructively discharged. Plemer offered evidence to support all four claims.

The only element of the *prima facie* case which Plemer arguably did not meet with respect to her promotion claim was that she was qualified for the position. She did, however, present evidence of her qualifications, including the fact that, as EEO Representative, she had been the only person who performed compliance work full time for half a year. Plemer was also recommended for the job by a caucus of employees and by the OFCCP compliance investigator, Henry Edwards. The district court found that Plemer did not meet the criteria necessary for the job and that William Willis was better qualified for the position. While these findings are not clearly erroneous, and Plemer has not appealed the denial of her promotion claim, it cannot be reasonably said that Plemer had no evidence to support her claim or that her claim was without arguable merit.

With respect to Plemer's constructive discharge claim, while the finding against her is not clearly erroneous and she has not appealed the denial of this claim, we likewise do not believe that it can fairly be characterized as frivolous or groundless.

Although we have found Plemer's claim under *Gunther* to have been inadequate, we do not believe Plemer should be forced to pay Parsons-Gilbane's attorneys' fees as a penalty for that inadequacy. This Court had not before given guidance as to what it considered necessary to satisfy the contours of a *Gunther*-based suit. Plemer did present evidence comparing her duties to those of Willis and evidence showing the disparity between their salaries. Her interpretation of *Gunther* may not have been consistent with this Court's, but in light of the scant Fifth Circuit precedent interpreting *Gunther* to which Plemer could have looked for guidance, her interpretation was not so frivolous, unreasonable, or groundless as to merit requiring her to pay the fees Parsons-Gilbane incurred in defending the claim.

Finally, we come to Plemer's claim that Parsons-Gilbane paid her unequally for performing equal work. The claim clearly was supported by evidence, if not by sufficient evidence to have made her successful. She proved her *prima facie* case, that she was paid less than Biggs, her replacement. She offered statistics which tended to show Company-wide disparities in salaries between men and women.

On remand, Plemer may succeed on this claim. Even if she does not, however, she had sufficient evidence to take her claims out of the category of those that are frivolous, unreasonable, or groundless.

The Supreme Court has stated:

"[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable." *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. at 700–01, 54 L.Ed.2d at 657.

The district court appears to have engaged in exactly the *post hoc* reasoning and hindsight logic that the Supreme Court proscribed. Because the district court did so, and because we find that Plemer's evidence gave her claims "arguable merit," we re-

verse the district court's assessment of attorneys' fees against Plemer.

### CONCLUSION

We affirm the denial of Plemer's promotion, constructive discharge, and *Gunther* claims. We reverse and remand Plemer's classic equal pay claim, under Title VII and the Equal Pay Act, with instructions that the district court consider, for whatever weight and persuasiveness it reasonably determines to be appropriate, the statistical evidence, and study more closely the OFCCP "findings" ("Proffer 1") to determine their admissibility, and reconsider its findings and conclusions respecting this claim, in accordance with our opinion. The district court should allow Plemer to reoffer "Proffer 1," and may need to reopen the evidence as to it, and the court, of course, has discretion to also reopen as to other aspects of the classic equal pay claim. We reverse the award of attorneys' fees against Plemer. Even should the district court hold on remand for Parsons-Gilbane, it shall nevertheless not award attorneys' fees against Plemer.

AFFIRMED IN PART, REVERSED IN PART, and REVERSED AND REMANDED IN PART.