Mary A. WOODWARD, Plaintiff,

v.

HERITAGE IMPORTS, a Utah Corporation, Dennis R. Boyle, Don E. Brower, and Daniel P. Mahfood, Defendants.

Civ. No. 89–C–644A.

United States District Court,
D. Utah, C.D.

Sept. 25, 1991.

John S. Adams, Taylor, Ennenga, Adams & Lowe, Salt Lake City, Utah, for plaintiff.

Raymond Scott Berry, Green & Berry, Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION

ALDON J. ANDERSON, Senior District Judge.

## I. INTRODUCTION

This case involves a claim by the plaintiff, Mary A. Woodward ("Woodward"), that the defendant, Heritage Imports ("Heritage"), and the named individual defendants discriminated against her on the basis of her gender when the defendants reduced her level of compensation prior to the termination of her employment. Woodward has brought causes of action based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). The court has jurisdiction pursuant to 28 U.S.C. § 1331. The case was tried to the bench on July 8–10, 1991. At the conclusion of the trial, the court took the case under advisement.

## II. FACTUAL BACKGROUND

Heritage is a Utah corporation involved in the sale of new and used automobiles. The named individual defendants held various positions in the management of Heritage. Organizationally, Heritage was divided into three distinct sales departments: New Sales, Used Sales, and Finance & Insurance ("F & I").[1] Each sales department was supervised by a department manager. The three department managers were accountable to the General Sales Manager who, in turn, was directly accountable to the General Manager. Finally, the General Manager reported to the Operations Manager. At the times relevant to this case, defendant Don Brower was employed as General Sales Manager; defendant Daniel Mahfood was employed as General Manager; and defendant Dennis Boyle was the Operations Manager.

In 1978, Woodward was hired by Heritage as a salesperson. She worked in a variety of positions and, in May, 1982, was promoted to F & I department manager. She retained this position until December 14, 1988, when Heritage terminated her for what it described as "attitude problems."

The events leading up to plaintiff's termination in late 1988 give rise to this case. Briefly summarized, those facts are as follows:

When she was originally promoted to manager of the F & I department, Woodward was compensated according to a formula which guaranteed her a monthly salary or, alternatively, compensated her on a commission arrangement, whichever amount was larger. The commission-based calculation was basically the sum of a percentage of total F & I department gross profits and certain specified bonuses based on a "dollar-per-car" formula.[2] The evidence indicated that, through her efforts to achieve bonuses and increase her dollar-per-car ratio, Woodward was able to secure a salary which ranged during the years

---

1. The F & I department was involved in the financing of automobile sales and the sale of certain "add-on" services including: life insurance, auto insurance, extended warranty coverage, guaranteed finishes, and undercoating.

2. Woodward testified that this "dollar-per-car" figure was derived by dividing the total gross profit of the F & I department by the total number of cars sold.

1985 to 1988 from $53,927 to $85,860.[3] During Woodward's tenure as F & I department manager, many adjustments were made to her compensation agreements. Although most of the changes were of minimal significance, beginning in 1987 Heritage began to calculate Woodward's salary such that maintaining her previous levels of compensation became more difficult. For example, in 1987, her salary was reduced from four percent of total department gross profit to two percent and her dollar-per-car bonus was similarly adjusted. In March, 1988, her dollar-per-car bonus was again adjusted.[4] Finally, in November, 1988, Woodward was asked to agree to a compensation plan which substantially altered the calculation of her compensation. Under this modified agreement, her salary was no longer based on a straight percentage of total department gross profit, but was tied to the amount of sales individually generated by Woodward. Although the precise effect of this new pay scale was not developed in the evidence,[5] Woodward alleges, and defendants admit, that her ultimate compensation would have been reduced under the modified plan.

At the time of her employment, Woodward was the only female in the managerial structure of Heritage. Throughout Woodward's employment as F & I manager, the male managers of the New Sales and Used Sales departments were compensated according to percentages of total departmental profits. In lieu of this commission-based compensation scheme, New and Used Sales Managers were guaranteed a base salary of $2,000 per month, an amount that exceeded Woodward's guaranteed monthly salary by $450. Moreover, the parties do not dispute that when her compensation agreement was altered in 1987–88, the male managers of the New and Used Sales departments received no corresponding reduction in their respective compensation agreements. Also undisputed are several other disparities between Woodward's compensation scheme and those of the New and Used Sales managers.[6]

Woodward objected to the amended compensation plan presented to her in November, 1988, and was summarily terminated in December, 1988. As a precondition to the filing of this action, Woodward timely filed a complaint with the Utah Anti-Discrimination Division. She requested and received a Notice of Right to Sue and filed this action within the time required by law.

At trial, Woodward testified that at least one of the individual defendants told her that she "made more money than a woman should make." Woodward testified that another Heritage employee revealed to her that her compensation plan was altered because she made too much money "for a dumb broad."

## III. ANALYSIS

Woodward asserts four causes of action. First, she claims that defendants' acts constitute unlawful discrimination against her

---

3. This salary range does not reflect an annual incremental salary increase. In fact, Woodward achieved her highest annual salary, $85,860 in 1986. She received $66,883 in 1987 and $65,874 in 1988.

4. For example, according to the March, 1988, dollar-per-car bonus chart, in order to receive a $5,000 bonus, Woodward would have had to achieve a $520–529.99 dollar-per-car ratio whereas the same bonus could be obtained under the 1987 calculation for a $500 dollar-per-car ratio.

5. Indeed, such evidence could not possibly have been adduced as Woodward's termination just days after the new compensation plan became effective precluded an assessment of its long term effect.

6. The male managers of the New and Used sales departments were entitled to select a "demonstrator" for use as a personal vehicle while Woodward was not allowed to select her demonstrator. Additionally, Woodward was required to "punch" a time clock while the male managers apparently were relieved of the same requirement. And finally, Woodward's compensation agreement contained a provision whereby Heritage could amend her compensation schedule at any time whereas the compensation agreements of the other managers contained no such clause. There were also allegations that Woodward was deprived of benefits similar to those paid to the male managers in the form of complimentary vacations, passes to sports events, and other so-called "spiffs".

on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Second, Woodward claims that she was paid a lesser salary than the male managers at Heritage for substantially similar work in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Third, Woodward claims that Heritage willfully failed to post Title VII notice as required by 42 U.S.C. § 2000e–10. Finally, Woodward claims injunctive relief, specifically reinstatement of her position at Heritage with back pay.

### A. *Title VII Claim*

Title VII of the Civil Rights Act of 1964 provides, in pertinent part:

> (a) It shall be an unlawful employment practice for an employer—

> (1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex ...

42 U.S.C. § 2000e–2(a). Under this provision, a plaintiff can state a claim for wrongful gender discrimination with respect to compensation and benefits under either of two theories. In this case, Woodward appears to rely on both theories and therefore each is addressed *infra.*

### 1. Classic Wage Discrimination

Woodward claims that, as manager of the F & I department, her position was substantially equal to those of the managers of the New and Used sales departments and that essentially similar levels of skill, responsibility and effort under similar working conditions were required for all of the departmental management positions. She then argues that Heritage discriminatorily denied her equal compensation for equal work in violation of Title VII.

■ Such an equal pay for equal work claim has been dubbed by at least one circuit as a "classic" compensation discrimination claim. *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1131 (5th Cir.1983). The facts supporting a classic wage discrimination claim will also support a claim under the Equal Pay Act. In order to successfully state a claim under Title VII for this type of discrimination, it was originally necessary to meet the standards of proof of the Equal Pay Act in showing unequal pay for equal work. *Id.*

In order to demonstrate a *prima facie* case of "classic" employment discrimination, the plaintiff must initially prove " 'a differential in pay based on sex for performing "equal" work.' " *Lemons v. City of Denver,* 620 F.2d 228, 230 (10th Cir.1980) (quoting *Ammons v. Zia Co.,* 448 F.2d 117, 120 (10th Cir.1971)), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). Once the plaintiff makes this showing, the burden then shifts to the defendant employer to come forward with a legitimate, nondiscriminatory reason for the challenged action. *Nulf v. Int'l Paper Co.,* 656 F.2d 553, 557 (10th Cir.1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). If the employer meets this burden, the plaintiff must then demonstrate that the nondiscriminatory reason proffered by the defendant is merely pretextual. *Id.* at 558.

This jurisdiction has long recognized that the "equal work" standard required to state a prima facie case under Title VII does not require that the positions compared be identical; they must, however, be "substantially equal." *Ammons,* 448 F.2d at 120 (quoting *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3rd Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970)). The test for determining whether the two positions are substantially equal is whether the two positions involve substantially equal skill, effort, responsibility and working conditions. *Nulf,* 656 F.2d at 560 (citation omitted).

■ At trial, Woodward produced demonstrative evidence in the form of a chart

depicting the managerial structure of Heritage. The chart showed that, schematically, each of the managers of the three sales departments maintained "equal" positions with respect to the management hierarchy of Heritage. The evidence also established some crossover between Woodward's job and those of the New and Used manager's jobs in that she would, on occasion, substitute for the other managers by supervising their departments. There was, however, no evidence that the other managers ever reciprocated by managing the F & I department. Woodward also proved that she performed competently and satisfactorily as manager of the F & I department.

In several respects, however, Woodward's job was not substantially equal to those of the male managers to which she would have the court compare her position. First, Woodward's position involved only minimal supervision of subordinate employees. Whereas the managers of the New and Used sales departments had as many as twenty subordinates for whose performance and management they were directly responsible, Woodward, as manager of the F & I department, had at most one employee under her supervision at any given time.

Second, the type and nature of the products sold in the New and Used sales departments differed dramatically from those sold in F & I. While the court makes no pronouncement as to which of the two positions required the *greater* skill level or effort, the skills necessary to consummate a sale of a vehicle on the lot obviously are very *different* from those required to sell add-ons once the sale of the vehicle is complete. Once the client has made the substantial decision to purchase an automobile, decisions regarding other available services and add-on products logically involve entirely different considerations.

Third, there was not sufficient overlap between Woodward's job and those of the New and Used sales department manager's jobs so as to obviate the differences between the positions. While Woodward did, at times, substitute for the other managers, such periods were invariably for brief periods of time and did not occur with significant frequency.

Finally, the job descriptions of the F & I manager and the New and Used sales managers manifest that the Heritage management anticipated different tasks, responsibilities and functions for the respective departments. The New and Used sales managers were charged with the responsibility for generating a volume of new and used car sales, inventory management, and supervision of walk-in and phone sales. The F & I department manager was made responsible for sales of finance contracts, life insurance, and service contracts; maintenance of accounts receivable and contracts in transit lists; approval of all transactions, and credit approval.

Although there was much testimony at trial addressing the relative worth of the various sales departments to the overall operation, that subjective and impossible assessment is irrelevant to the issues presented. For these reasons, the court has determined that the basic core of the positions of the F & I and New and Used sales managers were not substantially equal. Plaintiff has, therefore, failed to present a *prima facie* case on that point. Accordingly, the court need not examine the defendant's proffered nondiscriminatory reason for the challenged activity.

### 2. Gunther Wage Discrimination

Prior to 1981, a plaintiff seeking redress for sexual discrimination in the form of reduced wages was limited to the "classic" case as described *supra. See, e.g., Plemer,* 713 F.2d at 1131 (in order to state Title VII cause of action, plaintiff had to show unequal pay for equal work); *cf. Nulf,* 656 F.2d at 560 ("a differential in pay between employees is authorized if permitted by the Equal Pay Act"). In 1981, however, the United States Supreme Court held, in *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), that persons alleging sex discrimination in compensation are not precluded from suit under Title VII merely because they cannot make the threshold showing of unequal pay for equal work. *Id.* at 165,

101 S.Ct. at 2245. In effect, the *Gunther* case resulted in recognition of a supplemental cause of action under Title VII which is premised not on equal pay for equal work, but the independent assertion that the employer intentionally discriminated against the plaintiff with respect to compensation on the basis of sex. *Plemer*, 713 F.2d at 1132 (explaining *Gunther*).

■ In the present case, Woodward appears to have alleged a *Gunther* cause of action. As noted *supra*, at trial, Woodward testified that one of the individual defendants told her that she "made more money than a woman should make" and that a co-employee represented to her that, in the management's opinion, she made too much money for a "dumb broad." In so testifying and by adducing further undisputed evidence that she received a decrease in compensation, Woodward states a *prima facie* case of sex discrimination in compensation. The employer must thus come forward with a legitimate, nondiscriminatory justification for the pay cut in order to once again shift the burden back to Woodward to prove that the proffered reason is pretextual. *Nulf*, 656 F.2d at 557 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

■ Heritage produced evidence demonstrating that there were legitimate, nondiscriminatory reasons for reducing Woodward's compensation. First, defendant Boyle testified that Heritage was paying its F & I salaries at a rate of twenty-five percent of F & I departmental receipts as compared to an industry-wide standard of fifteen percent. Therefore, according to Boyle, Woodward's salary was reduced to bring it more into parity with industry standards. Second, the evidence revealed that, under Woodward's prior pay plan, her salary was derived entirely from calculations and reports she submitted to the management. One objective of the revised pay plan was therefore to compensate her pursuant to independently maintained records rather than from her own accountings. Third, at her pre-revision compensation levels, she was nearing the upper end of compensation which could possibly be earned under the then-existing pay scale. Her incentive to increase her productivity was consequently undermined and there was testimony that her pay scale was restructured, in part, to provide additional incentive. Fourth, there was testimony at trial to the effect that the Heritage management determined that Woodward's compensation levels simply were not justified by her job functions and that she received a windfall from the resulting disparity.

These undisputed facts provide a sufficiently legitimate and nondiscriminatory basis for the actions of the defendants in reducing the plaintiff's compensation. The burden of showing that these proffered justifications are merely a pretext for sex discrimination therefore shifted to the plaintiff. Because Woodward has introduced no evidence tending to negate the veracity of these reasons or to prove that they were merely a pretext for discriminatory intent, the claim must be rejected. In arriving at this conclusion, the court has considered and agreed with the reasoning of another trial court faced with a similar factual context:

> On this record, no rational factfinder could properly conclude that age or sex discrimination tainted the defendant's decision to reduce plaintiff's compensation schedule. The employer's justification for the change—to maintain an appropriate relationship between plaintiff's compensation and the results of her efforts, to rationalize the compensation schedule in light of the changed circumstances, to preserve the morale of other similarly situated employees, and to head off a potential, undeserved, windfall for plaintiff—is eminently reasonable, and plaintiff has offered nothing to dispute it.

*Green v. Edward J. Bettinger Co.*, 608 F.Supp. 35, 42 (D.C.Pa.1984) (granting defendant's motion for summary judgment in Title VII case), *aff'd*, 791 F.2d 917 (3d Cir.1986). In the present case, the evidence of defendant's reasons for reducing Woodward's compensation suggested an

eminently reasonable justification for the reduction in Woodward's pay.

### B. Equal Pay Act Claim

■ Plaintiff has also alleged a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), which provides, in part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex ...

In order to state a *prima facie* case of gender discrimination in the payment of wages under this section, the plaintiff must first prove that the defendant paid unequal wages for jobs performed under similar working conditions that required substantially equal skills, effort, and responsibility. *Sinclair v. Automobile Club of Oklahoma, Inc.*, 733 F.2d 726, 728 (10th Cir. 1984) (citing *EEOC v. Central Kansas Medical Center*, 705 F.2d 1270, 1272 (10th Cir.1983)). If the plaintiff successfully makes this showing, the burden then shifts to the defendant to prove that one of the four enumerated exceptions justifies the challenged wage differential. *Id.*

Accordingly, in the present case, the court's first inquiry is whether plaintiff has proved a *prima facie* case. The parties have not disputed the fact that, under her revised pay schedule, Woodward stood to receive a lower rate of compensation, or alternatively, that she would have had to work harder to maintain the same level of compensation. Also undisputed is that the

male managers of the New and Used sales departments received no corresponding adjustment to their respective pay plans. Woodward thus relies on her argument that her position involved substantially equal skill, effort, and responsibility as those held by the male managers of the New and Used sales departments in order to complete her *prima facie* case. For reasons discussed *supra* and elaborated *infra*, however, the court has concluded that her reliance is misplaced.

In *EEOC v. Central Kansas Medical Center*, 705 F.2d 1270 (10th Cir.1983), the Tenth Circuit Court of Appeals set forth standards to be used in assessing whether two positions are substantially equal within the meaning of the Equal Pay Act. The court explained:

Substantial equality is to be evaluated in terms of skill, effort and responsibility, and

"requires a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job. Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job. In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute."

*Id.* at 1272–73 (quoting *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir.1981)) (citations omitted).

As set forth above, no evidence was produced in this case which could provide an adequate basis for this court's conclusion that Woodward's position and those of the managers of the New and Used sales departments involved significantly different levels of skill or effort.[7] However, viewing

---

**7.** Nor was the evidence such that the court can

conclude that the compared positions involved

the positions "in light of the full factual situation," they clearly involved different responsibilities. As explained by the *Central Kansas Medical Center* court, to assess similarity of responsibility, the court must look to the activities for which the employees were accountable. In this case, Woodward was accountable for the sale of credit, insurance and add-on products. On the other hand, the managers of the New and Used sales departments were accountable for the basic sale of the automobile—a responsibility which was a prerequisite to Woodward's ability to perform her function and which involved significantly different considerations. *See supra* section II.A.1. Additionally, Woodward was accountable for the supervision of only one other employee whereas the other managers were accountable for as many as twenty. The job descriptions anticipated significantly different accountability for the positions.[8] And finally, although there was evidence of overlap between the positions in that Woodward occasionally substituted for the other managers, those incidences were largely isolated and infrequent and do not alter the court's conclusion. Woodward thus has failed to meet her burden of coming forward with a *prima facie* case.

Heritage argues that, even assuming Woodward proves her *prima facie* case, any pay differential between the positions is justified by the statutory exception for pay scales based on differences in quantity or quality of production. 29 U.S.C. § 206(d)(1)(iii). Because the court has concluded that Woodward failed to carry her burden, it need not address this argument.

substantially equal levels of skill and effort.

**8.** The court recognizes that mere formalities such as job descriptions or schematic organizational charts prepared by the defendant cannot be dispositive in comparing two positions. *See, e.g., EEOC v. Central Kansas Medical Center,* 705 F.2d at 1273 ("Job descriptions or titles do not determine whether the jobs are substantially equal."). However, in this case, the court finds that the realities of the factual situation supported the distinctions set forth in the job descriptions and therefore relies, in part, on the job descriptions in its conclusions.

**9.** That statute provides:

### C. Other Claims

As her third cause of action, Woodward alleges that Heritage violated the posting of notices requirement of Title VII.[9] Because there was no evidence indicating that Heritage in any way willfully or purposefully failed to post the notice prescribed by the statute, that cause of action is dismissed.

For reasons stated above, Woodward's fourth cause of action for injunctive relief is also denied.

### IV. CONCLUSION

Plaintiff has failed to prove any of her claims by a preponderance of evidence. Judgment shall be entered in favor of defendants on all claims.

IT IS SO ORDERED.

(a) Every employer, employment agency, and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of this subchapter and information pertinent to the filing of a complaint.

(b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense.

42 U.S.C. § 2000e–10.