**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**Nos. 00-21001, 01-20023**

_____


**BEVERLY WYMOLA,**

**Plaintiff-Appellee,**

**versus**

**TEXAS A & M UNIVERSITY,**

**Defendant-Appellant.**

_____

Appeals from the United States District Court
for the Southern District of Texas
(H-99-CV-255)
_____
April 10, 2002

Before JONES, EMILIO M. GARZA and STEWART, Circuit Judges.

PER CURIAM:[*]

Texas A & M University appeals from the district court's decision granting appellee Beverly Wymola's motion for judgment as a matter of law (JMOL), pursuant to Fed. R. Civ. P. 50, on Wymola's claim against A & M under the Equal Pay Act, 29 U.S.C. § 206(d)(1). The district court granted Wymola's motion after a jury trial that

[*]     Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

resulted in a verdict in A & M's favor.[1]  Because there was evidence to sustain the jury's verdict, we **REVERSE** and **RENDER**.[2]

A JMOL may be granted under Rule 50 only if there were no probative facts to sustain the verdict.  Lowe v. Southmark Corp., 998 F.2d 335, 336 (5th Cir. 1993).  The standard is the same as for summary judgment.  The court is required to draw all reasonable inferences in favor of A & M, the nonmoving party, and may not make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).  If the jury's conclusions are not unreasonable, the court may not reject them.  Coffel v. Stryker Corp., 2002 WL 287637, *3 (5th Cir. Mar. 14, 2002); Gutierrez v. Excel Corp., 106 F.3d 683, 686-87 (5th Cir. 1997).

Under the Act, if Wymola made out a prima facie case of unequal pay for equal work, Chance v. Rice University, 984 F.2d 151, 153 (5th Cir. 1993), then the burden shifted to A & M to prove

---

[1]  Wymola does not appeal the jury's adverse verdict on her Title VII claim or the court's summary judgment against her § 1983 and punitive damage claims.

[2]  We note in passing that A & M has made no claim in this appeal that it is immune from suit under the Eleventh Amendment.  In any event, this court recently reaffirmed that the Eleventh Amendment poses no bar to suits against states under the Equal Pay Act.  Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio, 261 F.3d 542, 549-51 (5th Cir. 2001).

by a preponderance of the evidence that the pay differential was justified under one of the four affirmative defenses set forth in the Act. Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio, 261 F.3d 542, 546 (5th Cir. 2001); Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1136 (5th Cir. 1983). "[T]he Act's four affirmative defenses exempt any wage differentials attributable to seniority, merit, quantity or quality of production, or 'any other factor other than sex.'" Washington County v. Gunther, 452 U.S. 161, 168, 101 S.Ct. 2242, 2247 (1981) (quoting 29 U.S.C. § 206(d)(1)). As the district court told the jury in its instructions, "factors other than sex" include education, training, and performance.[3] To uphold the entry of JMOL for Wymola, there would have to be no competent evidence from which the jury could have concluded that pay differences were "based on" "factors other than sex."

---

[3] See Parsons-Gilbane, 713 F.2d at 1138 ("Different job levels, different skill levels, previous training and experience: all may account for unequal salaries in an environment free from discrimination.") (citation and internal quotation marks omitted); Lenihan v. Boeing Co., 994 F.Supp. 776, 798 (S.D. Tex. 1998) (factors other than sex under Equal Pay Act include unique characteristics of the same job; an individual's experience, training or ability; special exigent circumstances connected to the business; and prior salary, provided it is not the sole cause of a pay disparity). Cf. Hodgson v. Golden Isles Convalescent Homes, Inc., 468 F.2d 1256, 1258 (5th Cir. 1972) (in enacting the Act, "Congress intended to permit employers wide discretion in evaluating work for pay purposes").

3

After review of the record, we conclude instead that a reasonable jury could have decided that A & M had proven one or more of the affirmative defenses available to it under the Act.[4] For example, there was testimony that factors such as educational credentials, the length of one's service with A & M's Computer Information Services (CIS) department, experience, and skill were used as criteria for promotions and salary increase decisions. Wymola's work evaluations show that she worked hard and satisfactorily -- both during the working day and on many nights and weekends -- and that she made efforts to overcome her relative lack of technical knowledge by learning off and on the job. But many or all of the male employees who earned more than Wymola also worked on nights and weekends, and all of them had significantly more education or experience in computer science (or so the jury could have found), even though some of them had less seniority within CIS than Wymola did. There was direct testimony that these

---

[4] That is, the jury was entitled to conclude from the evidence both that A & M had met its burden on one or more affirmative defenses and that the defense or defenses were not pretextual in the sense of that word that is used in Title VII cases. See Siler-Khodr, 261 F.3d at 546, 548; Parsons-Gilbane, 713 F.2d at 1137 & n.8. "[A] showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual." Price v. Federal Express Corp., 2002 WL 264247, *5 (5th Cir. 2002). "Showing that two candidates are similarly qualified does not establish pretext under this standard." Id.

4

male employees were simply better at their jobs than Wymola was.[5] The jury was entitled to rely on this and other evidence to conclude that Wymola was paid less than some of her peers for reasons that did not have to do with her sex. In particular, the jury could have believed that Wymola conscientiously did an excellent job at work, and that her employer paid many of her peers more because they outmatched her in education and technical knowledge, experience, or performance.[6]

In its memorandum and order granting JMOL for Wymola on the Equal Pay Act claim, the district court relied on a number of

---

[5] There was also testimony that Wymola was equal or about equal in ability, performance, or both to another employee, David Cherbonnier, who was paid roughly the same as Wymola during the time they were both employed by CIS. During most of this time, Wymola was paid somewhat more than Cherbonnier; for two relatively short periods, though, she was paid somewhat less. Also, there was evidence, much of it undisputed, from which the jury could have concluded that Wymola was better paid than some of her male peers for work that, according to the very theory on which she seeks to recover under the Act, required a similar amount of skill, effort, and responsibility. (While Wymola argues that her job was equal in all relevant respects to the jobs of men who were paid more than she was, she appears not to contend that her job was not equal in any relevant respect to the jobs of men who were paid less than she. Of course, even if she had made such an argument, the jury would not have been required to believe it.)

[6] Because there was evidence to support a finding that A & M had proved an affirmative defense, we do not decide whether a reasonable jury could have found that Wymola had not proven a prima facie case under the Act. Compare Chance, 984 F.2d at 153; McKee v. McDonnell Douglas Technical Servs. Co., Inc., 700 F.2d 260, 262-63 (5th Cir. 1983) (affirming district court's refusal to enter JMOL for plaintiff in Equal Pay Act case; jury could reasonably have found that plaintiff had not made out prima facie case).

factual assertions that were not required by the evidence.  We note a few of these assertions to give a flavor of their nature.

1.  The court stated that Elroy D'Souza lacked networking experience but was hired with a better title (Programmer/Analyst I) than Wymola and at a higher rate of pay ($3,000 more per annum). There was evidence that D'Souza, who had a graduate degree in computer science, was more experienced and much more skilled than Wymola, who did not have such a degree.  The court disregarded this evidence.

2.  The court stated that when Wymola learned that her position had been omitted from a reclassification that affected her male peers, she questioned her then supervisor, Fred Fisher, about the omission, and that his response was unsatisfactory.  The court disregarded Fisher's testimony that he was not responsible for the reclassification and that there was no reason to reclassify Wymola's position because it was roughly equivalent to one of the new positions created by the reclassification.  The jury was not required to credit Wymola's testimony on these and other matters. Coffel, 2002 WL 287637 at *12.[7]

---

[7]  At the trial, Wymola called only three witnesses other than herself:  her husband, who testified briefly on how her experience with her employer had affected her emotionally and put strains on their relationship;

6

3. The court stated that two males, Couch and Herbert, were hired in 1992 from outside Wymola's work group at a higher salary than Wymola. The court omitted to mention that Couch's and Herbert's salaries were higher than those of other male members of the group, not just of Wymola.[8]

4. The court stated that Wymola received her first salary increase in October 1992. The court overlooked evidence that Wymola received merit increases before that date. The court also characterized various increases in Wymola's pay as "cost-of-living

---

Wymola's second supervisor at CIS, Bob Mann, who testified as an adverse witness and who supplied much testimony on which the jury could have relied in finding for A & M; and an A & M official who testified chiefly about what she had learned while commencing A & M's internal investigation of Wymola's complaint of sex discrimination. Thus much, if not most, of the evidence in Wymola's favor amounted to Wymola's own testimony, much of which was contradicted or called into question by the testimony of other witnesses. As the district court said in its instructions, the jury was at liberty to make its own decisions as to the credibility of this testimony. Cf. Reeves, 530 U.S. at 151, 120 S.Ct. at 2110 (jury is required to believe evidence supporting movant that is uncontradicted and unimpeached, at least to extent that it comes from disinterested witnesses).

[8] Along the same lines, the district court ignored or discounted testimony that, because the funds available for salary increases were highly constrained by factors beyond the control of CIS officials (including the willingness or lack thereof of Texas legislators to provide increases in funding for A & M), few CIS employees got raises or promotions at all during at least some of the fiscal years at issue in this litigation; that Wymola nonetheless received several raises in the course of her tenure at CIS, along with one major promotion whereby she "leapfrogged" one or two less prestigious intermediate positions to which she could have been promoted; and that the differences between the pay of certain relatively well paid male employees and of certain other male employees were about as great as the differences between the pay of the well paid male employees and that of Wymola.

increases" or "equity raises" when there was evidence that these increases were merit increases.

5. The court stated that Wymola's second supervisor in CIS, Bob Mann (who succeeded Fisher), asked Wymola whether she was "finally satisfied" when she received her October 1992 salary increase. Mann testified that he did not mean this comment in the negative way in which Wymola apparently took it. The jury should have decided how to interpret this comment.

6. The court described as "factually untrue" an A & M official's statement to Wymola that promotions and merit increases could not be given in the same fiscal year. The court cited evidence that various other employees received merit increases within a year after receiving a promotion. This evidence, however, is consistent with the A & M official's statement. Each of the raises mentioned by the court occurred in the September _after_ the corresponding promotion; and there was ample evidence that A & M's fiscal year began in September.

7. The court stated that an A & M investigator who looked into Wymola's claim of pay disparity was met with resistance and intimidation from CIS male supervisors. The court ignored testimony to the contrary.

8

In summary, the district court applied the wrong standard under Rule 50.  Instead of viewing the evidence in the light most favorable to nonmovant A & M, the court overlooked much evidence that favored A & M and viewed other evidence in a light favorable to Wymola -- the <u>movant</u>.  The court usurped the jury's authority as finder of fact.

We **REVERSE** and **RENDER** judgment in favor of A & M on the Equal Pay Act claim.