United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 18, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-11299

(Summary Calendar)

_____

LILLIAN PHILLIPS,

Plaintiff - Appellant,

v.

TXU CORP., TXU ENERGY CO. LLC, TXU ENERGY RETAIL CO. LP,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 3:03-CV-2736

_____

Before SMITH, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:[*]

Lillian Phillips appeals from the district court's order

granting summary judgment in favor of her employer, TXU Energy

Retail Co. ("TXU Retail"),[1] on all her claims: sex discrimination

in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(e),

and Title VII, 42 U.S.C. § 2000e-2000e-17, and race

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] TXU Energy and TXU Retail are wholly-owned subsidiaries of
TXU Corp.  Throughout this opinion, "TXU" refers to Defendants
collectively.

1

discrimination and retaliation in violation of Title VII.[2]  For the following reasons, we AFFIRM.

I. Background

On May 21, 2001, Duane Lock, Director of Product Management at TXU Retail, and Jim Hess, Vice-President of Strategic Businesses at TXU Retail, hired Lillian Phillips, a black female, for the position of Product Manager in the Product Management Group.  Product Management was a sub-group within TXU Retail's Strategic Accounts Department.  Throughout her employment with TXU Retail, Phillips reported to Lock, a black male, who reported to Hess, a white male.

During the time of Phillips's employment, TXU Retail employed five Product Managers and paid them a salary within the range of $6,420 to $9,640 per month.  Phillips earned the second highest salary at $7,916 per month.  Chuck Wyse, a white male, earned $8,666 per month.  Wyse received a $2,500 signing bonus; Phillips received a $2,000 signing bonus.  A February 2002 raise brought Phillips's monthly salary to $8,235, and Wyse's to $8,930.

In December 2001, TXU Energy formed an ad hoc committee to address issues of supplier diversity, and Lock assigned Phillips to represent TXU Retail on the committee.  In April 2002, Phillips helped present a "Supplier Diversity Plan" to the

_____

[2] Phillips brought one claim in the district court that is not subject to this appeal.

president of TXU Retail.  In addition to her efforts on the supplier diversity committee, Phillips volunteered as a member of TXU Corp.'s Diversity Advisory Council ("DAC").  The DAC met quarterly with the Diversity Steering Committee to present ideas and give feedback regarding improving workplace diversity.

In January 2002, Phillips received an employee review that indicated she met expectations.  At the performance review meeting, according to Phillips, Lock told Phillips that Hess "did not like aggressive women but especially not aggressive black women."

In March 2002, Cheryl Stevens, Vice-President of Workforce and Supplier Diversity at TXU Business Services Company,[3] invited the DAC members to a "get-to-know-you" lunch.  Phillips had a conflicting obligation but appeared briefly at Stevens's luncheon to introduce herself and said that she felt like she had "stepped back in time" when coming to work at TXU.  It is unclear how Lock learned of Phillips's statement; but after he did, Lock said to Phillips that she "needed to be careful making those kinds of statements in this company."  Lock denies making such a statement.

Stevens and Phillips's relationship became tense as they quibbled over the turf of Supplier Diversity.  At one point, according to Phillips, after she and Stevens had a tense

---

[3] Phillips did not report to Stevens, either directly or indirectly.

discussion about Supplier Diversity, Stevens said to her, "You'd better be more afraid of me than of [Lock] because [Lock] can leave the company, but I will still be here and you will have to deal with me."

In the summer of 2002, TXU Retail underwent a reduction in force: It terminated Phillips and 33 other Strategic Accounts employees, including two white males from Product Management. Phillips complained of her termination to TXU's General Counsel in September 2002. An investigation by Pat Dixon, Employee Relations Manager, and Tommy Lee, Human Resources Manager of TXU Retail, ensued. They concluded that there was no evidence of discriminatory or retaliatory conduct with respect to Phillips's treatment while at TXU or her termination. Phillips filed suit on November 10, 2003. After discovery, TXU filed and won summary judgment on all of Phillips's claims. Phillips appeals.[4]

II. Discussion

We review the grant of a summary judgment motion de novo, and apply the same standard as the district court. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 308 (5th Cir. 2004); FED. R. CIV. P. 56. We resolve any factual inferences in favor of Phillips, the nonmovant, and ask whether TXU, the movant, is entitled to judgment as a matter of law. Id.

---

[4] In her complaint, Phillips also alleged TXU discriminated against her by failing to hire her for several new positions after her termination. She does not appeal the district court's grant of summary judgment to TXU on that claim.

4

The McDonnell-Douglas burden shifting standard for both discrimination and retaliation claims in the Fifth Circuit is well-settled.  See, e.g., Manning v. Chevron Chem. Co., 332 F.3d 874, 881 (5th Cir. 2003); Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004).  First, Phillips must state a prima facie case of discrimination or retaliation.  Id.  If she succeeds, the burden shifts to TXU to provide a legitimate, nondiscriminatory and nonretaliatory reason for paying her differently from others in the same position and terminating her. Id.  If TXU satisfies this burden, the burden again shifts to Phillips to prove that TXU's proferred reason was pretextual. Id.  Phillips may also prove that sex or race was a motivating factor for the pay differential or her termination, even if TXU's reason is true.  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  "The plaintiff retains the ultimate burden of persuasion throughout the case."  Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

A. Sex Discrimination

Phillips alleges that TXU discriminated against her on the basis of sex by paying Wyse more than she was paid for the same position.  She asserts these facts for her sex discrimination claim under both the EPA and Title VII.

"Title VII states that it is unlawful 'to discriminate against any individual with respect to his compensation . . .

5

because of such individual's [. . .] sex.'" Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio, 261 F.3d 542, 545-46 (5th Cir.), cert. denied 537 U.S. 1087 (2002) (quoting 42 U.S.C. § 200e-2(a)). "[T]he EPA has a higher threshold [than Title VII], requiring that an employer not discriminate 'between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. In short, it demands that equal wages reward equal work.'" Id. at 546 (citing 29 U.S.C. 206(d)(1); Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). Phillips's burden to show that TXU's legitimate, nondiscriminatory reason is pretextual applies to both theories. Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1136 (5th Cir. 1983). The EPA defines the range of legitimate, nondiscriminatory reasons available to an employer: An employer may pay different wages under these circumstances based on one of the four statutory exceptions to the EPA: (1) a seniority system; (2) a merit system; (3) a system that measures earning by quantity or quality of production; or (4) a differential based on any other factor other than sex. Id.

TXU does not contest that Phillips established a prima facie case for sex discrimination under both the EPA or Title VII. Assuming she did,[5] we proceed to TXU's asserted legitimate,

---

[5] The district court did not decide the issue, and TXU does not contest that Phillips has established a prima facie case with

6

nondiscriminatory reason for its acts: Wyse had an MBA, unlike Phillips, and had more years of marketing experience than she did.[6] TXU produced a witness from its human resources department who testified that employees' salaries, including Wyse's and Phillips's, depended on their education and experience, and that he placed Wyse in a higher pay range because of Wyse's education and experience. Lock testified he determined what amount to offer to each Wyse and Phillips based on the salary ranges established by the human resources department.

Phillips makes three arguments that TXU's reason is pretextual: she claims (1) that TXU did not consider education and experience in determining salaries; (2) that Lock never compared her education and experience to Wyse's; and (3) that TXU's nondiscriminatory reason does not actually explain Phillips's salary at the time that decision was made. In support of her first argument, she points to another Product Manager, Trey Beasley, who earned less than Phillips despite Beasley's

_____

regard to her claim for sex discrimination under the EPA. To establish a prima facie case under Title VII, Phillips must show that she was (1) a member of a protected class, and (2) she was paid less than a nonmember for work requiring substantially the same responsibility. See Plemer at 1136. To establish a prima facie case under the EPA, Phillips must show that: (1) TXU is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as an employee of the opposite sex; and (3) she was paid less than the employee of the opposite sex. See Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993).

[6] Phillips does not contest these facts.

7

MBA.  Philips contends TXU could not have considered Wyse's MBA in determining his salary because Beasley's MBA did not secure him a larger salary than Phillips.  Phillips ignores that education was but one of the two factors cited by TXU as variables that explain salary differences.  The differences in pay between Wyse, Phillips, and Beasley also depend on their respective experience.

Regarding Phillips's second argument, it is uncontested that Lock did not make a side-by-side comparison of Wyse's and Phillips's education and experience.  Phillips recounts Lock's testimony that "[i]f there was a difference [in the salary offered to Wyse and Phillips], it could have pretty much been primarily two things, education and experience."  Phillips makes much of Lock's ostensible uncertainty in this testimony.  Her main contention is that Lock offers this explanation for the salary difference as a possibility, not an actual fact.  First, neither the EPA nor Title VII requires employers to make side-by-side comparisons.  TXU's identification of a differential basis other than sex to explain the difference in Wyse's and Phillips's salaries suffices to meet the EPA's threshold.  Second, Lock's testimony does not prove that he did not rely on Wyse's and Phillips's education and experience in determining what salary to offer each.  Lock explained that he did not remember whether there was a pay differential.  He also explained the human resources department's role in compensation decisions during his

8

deposition:

> Q: Do you remember in relation to Ms. Phillips' offer whether Mr. Wyse's offer was higher or lower than hers?
>
> A: At the time I had no idea whether it was higher or lower. I was given a scale by HR; and based upon background, experience, education, and consensus with HR, an offer was made.

Lock relied on the human resources department to set appropriate salary ranges for potential employees. Phillips does not allege that TXU's human resources witness discriminated against her when he set her salary range. Clearly, when Lock accepted Human Resource's recommended salary ranges for each employee, he relied on Wyse's and Phillips's education and experience in determining their respective salary offers.[7]

Phillips fails to establish TXU's nondiscriminatory reason as pretextual. We affirm the district court's grant of summary judgment to TXU on her claim for sex discrimination under both the EPA and Title VII.

B. Race Discrimination and Retaliation under Title VII

Assuming Phillips established a prima facie case for Title

---

[7] In addition to the aforementioned arguments, Phillips quotes Patrick v. Ridge, 394 F.3d 311 (5th Cir. 2004), and Uviedo v. Steves Sash & Door Co., 738 F.2d 1425 (5th Cir. 1984), to argue that TXU did not proffer sufficient evidence to support its nondiscriminatory reason. Phillips's reliance is misplaced. Unlike in Patrick, the testimony of TXU's witness from its human resources department supports Lock's explanation for the pay differential and squarely places the reason behind the pay differential at the time Lock made Phillips the salary offer. Unlike in Uviedo, TXU timely offered evidence to support its nondiscriminatory reason for paying Phillips a lower salary than Wyse.

9

VII race discrimination and retaliation,[8] we turn to TXU's proffered nondiscriminatory reason for Phillips's termination. TXU states that it terminated Phillips as part of a reduction-in-force ("RIF"), termed "Project OPUS." Upper level managers received training and evaluated employees in an assessment process that examined their job-related competencies. Lock scored Phillips lowest among the Product Managers. Hence, she was one of three who were terminated.[9]

Phillips concedes that terminating an employee in a RIF can be a legitimate, nondiscriminatory reason for terminating an employee, but contends that TXU did not offer further evidence in support of its decision to terminate Phillips instead of other employees. On the contrary, TXU offered evidence that Phillips received the lowest score on the assessment because of Lock's perception of her lack of experience in product management and

_____

[8] A prima facie case of race discrimination requires that Phillips show that (1) she belonged to a protected group; (2) she was qualified for her position; (3) she was terminated; and (4) others who were not members of the protected class remained in similar positions. See Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999).

Although TXU contests that Phillips demonstrated a prima facie case of retaliation, for purposes of this review, we assume that she did. Her prima facie case of retaliation requires evidence that (1) she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action. Roberson v. Alltel Info. Servs., 373 F.3d 647, 655 (5th Cir. 2004).

[9] One white male volunteered for termination; and the employee with the next lowest score on the OPUS assessment, another white male, was terminated with Phillips.

10

financial acumen.

Phillips does not contest that she received the lowest score but argues that TXU's reason is pretextual. She maintains that her score is inaccurate and that TXU has given inconsistent reasons for her termination. Phillips argues her score was inaccurate because it was based on an inaccurate assessment, the January 2002 performance reviews. She alleges that the January performance reviews were biased. Even if we were persuaded by Phillips's arguments, TXU denies that the January performance reviews were used in the decision-making process for the RIF, and Phillips offers no evidence in support of her contention.

Next, Phillips argues that TXU gave conflicting reasons for her termination. While each reason on its face may differ from some others, Phillips ignores their relevancy to one another. For example, she quotes Lock: "[The] two reasons why [Phillips] was let go . . . [are] lack of experience with product developmental [sic] management and lack of experience [with] financial acumen." She recounts TXU's summary judgment motion: "Phillips was selected to be terminated in the [RIF] based on her low assessment scores, her limited knowledge of the Energy Sentinel suite of products, and lack of financial skills." Phillips also cites to Dixon and Lee's report to demonstrate what she deems is another conflicting explanation: "[Phillips's termination] was due in large part to [her] lack of success in completing two product development initiatives." Phillips argues

11

that these ostensibly different reasons demonstrate their falsity, relying on <u>Thornbrough v. Columbus & Greenville R.R. Co.</u>, 760 F.2d 633 to support this assertion.

Unlike in <u>Thornbrough</u>, reversal and remand is not warranted in the instant case because Phillips did not refute any of the quoted reasons; she thus fails to raise a genuine issue of material fact with regard to pretext. <u>See id.</u> at 646. Furthermore, the record demonstrates that Lock's and TXU's reasons support one another: Lock admitted that he used the assessment he prepared in deciding who he would terminate, and he attributed Phillips's low score on the assessment to her lack of experience with product development management and lack of financial experience. TXU's summary judgment motion mentioned both the assessment and Phillips's lack of financial experience. Even if Dixon's and Lee's roles were relevant to Phillips's termination, the reason they cite in their report is not necessarily inconsistent with the others.

Phillips next contends that even if TXU's reason is true, TXU was motivated by her race in terminating her. She recounts the tension between her and Stevens in the wake of Phillips's comment that she felt like she "stepped back in time." She reminds the court of Lock's admonition that she "be careful making those kinds of statements in this company," as well as his earlier statement that Hess "did not like black women but especially not aggressive black women." Phillips contends that

12

Lock is a "cat's paw" for Hess, and that Lock terminated Phillips to please his boss.

A remark is considered probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker. Laxton v. Gap, Inc., 333 F.3d 572, 583 (5th Cir. 2003); See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002).

Lock's remark about Hess suggests that Hess held the discriminatory animus, not the speaker. As it was Lock who was responsible for Phillips's termination, not Hess, Lock's remark about Hess's alleged dislike is not probative of discrimination. Phillips fails to produce any evidence to support her contention that Lock was acting at Hess's behest when he terminated Phillips.[10] Lock's "better be careful" remark, assuming arguendo that it evidences discriminatory animus, stands alone as the only evidence of pretext. It does not raise a genuine issue of material fact that TXU discriminated against Phillips. See Palasota v. Haggar Clothing, Inc., 342 F.3d 569, 577 (5th Cir. 2003) ("After Reeves . . . so long as remarks are not the only evidence of pretext, they are probative of discriminatory

---

[10] Phillips's "cat's paw" argument consists of conclusory allegations. The facts in this case do not raise the suspicion generated in Russell v. McKinney Hospital Venture, 235 F.3d 219 (5th Cir. 2000), on which Phillips relies.

intent.").

Phillips also points to Stevens's remark, "[y]ou'd better be more afraid of me than of [Lock]" as evidence of retaliation. Phillips does not offer any evidence that Stevens had influence or leverage over the formal decisionmaker, Lock.

III. <u>Conclusion</u>

We AFFIRM the district court's grant of summary judgment.

14