**Marcy DE LA CRUZ, Plaintiff,**

v.

**COASTAL BEND REGIONAL COURT RESIDENTIAL TREATMENT CENTER, et al, Defendants.**

**Civil Action No. 2:12–CV–355.**

United States District Court,
S.D. Texas,
Corpus Christi Division.

Oct. 21, 2013.

Gay Ellen Gilson, Attorney at Law, Corpus Christi, TX, for Plaintiff.

Jacqueline Lee Haney, Cynthia Burton, Office of Attorney General, Austin, TX, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RANDY CRANE, District Judge.

Now before the Court for consideration is Defendants' Motion for Summary Judgment. (Doc. 21). Plaintiff Marcy De La Cruz (hereinafter "De La Cruz") sued Defendants Linda Diaz, Director of the Coastal Bend Regional Court Residential Treatment Facility, and the San Patricio County Community Supervision and Corrections Department, alleging gender discrimination and violation of her Equal Protection rights. (Doc. 14). Defendants now move for summary judgment on the grounds that De La Cruz cannot satisfy her prima facie discrimination case and that Diaz is entitled to qualified immunity. For the reasons explained below, the Court **DENIES** Defendants' Motion.

### I. Background

De La Cruz began working for San Patricio County Community Supervision and Corrections Department (CSCD) as a

part-time Resident Supervisor in the Coastal Bend Regional Court Residential Treatment Facility (CRTC) in July of 2011. (Doc. 14 at 2). The CRTC is a facility "which provides job counseling, treatment, education, and social services for qualified offenders sentenced to probation." (Doc. 21 at 3). The duties of a Resident Supervisor (RS) include monitoring the residents within the facility, driving residents to their jobs, and conducting pat down and strip searches of residents when they enter the facility. *Id.* Defendants are required to have one male and one female RS available for each shift to conduct searches of the residents. *Id.*; (Doc. 21, Ex. 8 at 6). In December of 2011, Edward Botello, a male RS, resigned and De La Cruz expressed interest in, and later interviewed for, the position. (Doc. 21, Ex. 6 at 32, 7). Sally Montoya, a female RS, was terminated at some point in January. *See id.* at 8. De La Cruz filled Sally's position, although the parties disagree as to the circumstances. Defendants claim De La Cruz was asked to temporarily fulfill the duties until a permanent replacement could be found, *id.*, but De La Cruz alleges she was hired as a full-time Resident Supervisor, (Doc. 27, Ex. 1 at 1). While working in this position, De La Cruz did not receive the full-time benefits given to other full-time employees. *Id.* Around February 2, De La Cruz claims that Edward Salazar, director of the CSCD, told her he needed a male for the RS position. (Doc. 27, Ex. 1 at 2).

Then, on February 8, Linda Diaz, director of the CRTC, and Jorge Sanchez, deputy director of the CRTC, called De La Cruz into a meeting. (Doc. 27, Ex. 1 at 2). Diaz and Sanchez told De La Cruz they had received complaints about her and that she was going to be moved back to part-time. *Id.* De La Cruz believes they told her at this meeting she was being replaced by a male. *Id.* That afternoon,

although the details differ, both sides agree that a verbal altercation occurred in the break room between Diaz and De La Cruz, and that afterwards, De La Cruz turned in her jacket, name tag, and the shirt she was wearing and walked out of the facility in only her bra. *Id.,* (Doc. 27 at 7–8). De La Cruz claims she was fired before the verbal altercation, (Doc. 27, Ex. 1 at 3), but Defendants claim that she voluntarily resigned that morning, and, in any case, would have been fired after she left the facility in her bra. (Doc. 21 at 13). On February 27, Ben Anderson began working at the CRTC as a full-time RS. (Doc. 21, Ex. 6 at 30). Blanca Monsibais began working as a full-time RS on March 1. *Id.* at 23.

De La Cruz claims that she was denied employment benefits, demoted, and ultimately terminated because of her gender, in violation of the Civil Rights Act and Equal Protection Clause of the Fourteenth Amendment. (Doc. 14). Defendants respond by claiming a valid, nondiscriminatory reason for the employment action taken, namely, that De La Cruz was moved back to part-time work because of the complaints against her. (Doc. 21 at 10–12). Furthermore, De La Cruz was replaced by a female. *Id.* Defendants now move for summary judgment on the grounds that De La Cruz cannot establish a prima facie gender discrimination case for purposes of Title VII and 42 U.S.C. § 1983, and that Dr. Diaz is entitled to dismissal on the grounds of qualified immunity. (Doc. 21).

## II. Analysis

### 1. Summary Judgment

A district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter

of law. FED.R.CIV.P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party moving for summary judgment has the initial responsibility of informing the district court of the basis for its motion and identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED.R.CIV.P. 56(c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and by affidavits or otherwise, "set out specific facts showing a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; FED.R.CIV.P. 56(e). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir.2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir.2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

## 2. Gender Discrimination

"Title VII prohibits employers from discriminating against employees on a number of grounds, including gender." *Admire v. Strain*, 566 F.Supp.2d 492, 498 (E.D.La.2008) (citing 42 U.S.C. § 2000e–2(a)(1)). To establish a prima facie case of gender discrimination under Title VII, Plaintiff must show that:

(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that the position was filled by someone outside of the protected class or that others outside the protected class who were similarly situated were more favorably treated.

*Id.* In addition to bringing suit under Title VII, a plaintiff claiming gender discrimination may also bring suit under 42 U.S.C. § 1983, and the summary-judgment test for claims under § 1983 is the same as the test for discrimination claims under Title VII. *Patel v. Midland Memorial Hosp. and Medical Ctr.*, 298 F.3d 333, 342 (5th Cir.2002). "To survive a summary judgment motion, the plaintiff must first present a prima facie case of discrimination. If established, a prima facie case raises an inference of discrimination, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse decision. If the defendant presents such a reason, then the inference disappears, and the plaintiff must offer evidence that the proffered reason is a pretext for ... discrimination." *Id.*

■ At the outset, the Court considers De La Cruz's objections to Defendants' Motion for Summary Judgment. First, De La Cruz objects that Defendants did not plead a statutory defense based upon bona fide occupational qualification under Title VII. (Doc. 27 at 2). Defendants did, however, argue in their Answer to Plaintiff's

Second Amended Complaint that the actions of which De La Cruz complains were taken "in accordance with agency policy and [were] required by business necessity." (Doc. 16 at 4). A business necessity defense is similar to a bona fide occupational qualification defense, and Defendants maintained this defense throughout discovery, which is sufficient to put the plaintiff on notice of this defense and to avoid prejudice to the plaintiff. *White v. Dep't of Corr. Servs.*, 814 F.Supp.2d 374, 385 n. 7 (S.D.N.Y.2011). Second, De La Cruz objects to Defendants' claim that she seeks injunctive relief from Diaz in her official capacity. (Doc. 27 at 3). De La Cruz's Second Amended Complaint Second makes clear that De La Cruz is suing Diaz in her individual capacity, (Doc. 14 at 6), and so Defendants' claim is misplaced. Third, De La Cruz objects to Defendants' use of the same actor inference as a defense, (Doc. 27 at 4–5), but Defendants point out that the inference is not an affirmative defense, (Doc. 32 at 5). Fourth, De La Cruz objects to Defendants' "representation that on average they had 4 male Resident Supervisor positions and 16 female Resident Supervisor positions as there is no proper citation to evidence to support this fact." (Doc. 27 at 3). Although not properly cited in their brief, evidence to support this representation is in Salazar's deposition, and because the statement is a general one relating to average numbers, the Court finds it is not contradicted by the Employee Schedule, as De La Cruz claims. (Doc. 21, Ex. 4 at 11; Doc. 27 Ex. 2). Finally, De La Cruz objects to Edward Salazar's affidavit and supporting exhibits for failure to comply with Federal Rule of Civil Procedure 56(c)(4), which requires an affidavit to set out facts that would be admissible in evidence, and Federal Rule of Evidence 901(a), which requires authentication of evidence. (Doc. 27 at 3). The Court notes

that, even though De La Cruz objects to these records as not properly authenticated, Defendants produced these documents in discovery and De La Cruz attaches some of the same documents as exhibits to her Response to Defendants' Motion for Summary Judgment. (Doc. 27, Ex. 4, Ex. 13). In any event, Salazar has provided a supplemental, amended affidavit properly laying out the foundation for these business records, (Doc. 32, Ex. 1), and the Court will consider this amended affidavit that is substantively the same as the original.

## A. Plaintiff's Prima Facie Case

▇ De La Cruz easily satisfies the first three elements of her prima facie case. De La Cruz is a female. (Doc. 27, Ex. 1 at 1). She was qualified for the Resident Supervisor position. (Doc. 21, Ex. 4 at 22). She suffered several adverse employment actions—she was denied full-time benefits, she was demoted, and she was later terminated. (Doc. 27, Ex. 1 at 2–4). A genuine dispute exists as to the fourth element.

De La Cruz argues that she was replaced by a male, Ben Anderson. (Doc. 27, Ex. 1 at 6). De La Cruz relies on the Employee Schedule, which shows her name replacing Sally Montoya's name beginning January 23, and then Ben Anderson's name replacing hers on February 27. (Doc. 27, Ex. 2). De La Cruz explained in her affidavit, "The way that the Employee Schedule worked was that your name went into the slot of the position that you were replacing. In other words, Ben Anderson's name was placed into the slot where my name had been. This means he replaced me." (Doc. 27, Ex. 1 at 6). Although De La Cruz admitted she did not know who prepared the schedules, (Doc. 21, Ex. 1 at 114), it is reasonable to infer that as an employee of six months she understood how the sched-

ules worked and how new employees were added. The fact that Ben Anderson filled the spot on the schedule De La Cruz once held could support a finding that Defendants replaced De La Cruz with a male.

Defendants argue that De La Cruz was replaced with a female, Blanca Monsibais. (Doc. 21 at 11). Defendants have produced personnel records showing that Blanca Monsibais began working as a full-time RS on March 1. (Doc. 21, Ex. 6 at 23). Defendants claim that Ben Anderson, who began working on February 27, was filling the male RS position vacated by Edward Botello in late December. (Doc. 21, Ex. 6 at 30, 32). Salazar testified that he did not use numbers to track employee positions but could tell who replaced someone by the dates of their employment. (Doc. 21, Ex. 4 at 19). The Employee Schedule shows that Monsibais began working in a Bus Driver/RS position, which is different than the position filled by De La Cruz and Anderson, on March 5. (Doc. 27, Ex. 2). The Employee Schedule also shows De La Cruz in the full-time position on January 23, a week before Defendants claim Sally Montoya left. (Doc. 27, Ex. 2; Doc. 21, Ex. 6 at 8).

■ Based on the sworn statements in her affidavit [1] and the Employee Schedule produced by Defendants in discovery, De La Cruz has demonstrated that there is a genuine issue of material fact as to whether she was replaced by a male. Because the Court must, at the summary judgment stage, resolve doubts in favor of the nonmoving party, the Court finds that De La Cruz has made out a prima facie case to support an inference of discrimination. *See, e.g., Wojciechowski v. Nat'l Oilwell Varco, L.P.,* 763 F.Supp.2d 832, 858

(S.D.Tex.2011) (holding that plaintiff satisfied her prima facie discrimination case when she proved three elements and raised a fact issue as to the fourth element of her claim).

## B. Defendants' Legitimate, Nondiscriminatory Reason

"A prima facie case raises an inference of unlawful discrimination. The burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action. The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir.1996) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

First, Defendants admit that De La Cruz did not receive full-time benefits. (Doc. 21, Ex. 2 at 31–32). Defendants claim that De La Cruz was only temporarily filling Sally Montoya's full-time position and produced a memo from Diaz to the entire staff stating De La Cruz was only temporarily filling the position. (Doc. 32, Ex. 1 at 5; Doc. 21, Ex. 6 at 8). Part-time employees did not receive benefits. *Id.* at 2. De La Cruz's part-time, temporary status was the reason she did not receive benefits.

Second, Defendants assert that Diaz and Salazar made the decision to demote De La Cruz because of the complaints against her. Diaz testified that she had received numerous complaints against De La Cruz.

---

**1.** "A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary

judgment." *Carmona v. Carmona,* CIV A H06–0228, 2007 WL 543438 at n. 9 (S.D.Tex. Feb. 16, 2007) (quoting *Cadle Co. v. Hayes,* 116 F.3d 957, 961 n. 5 (1st Cir.1997)).

Specifically, an employer called Diaz to complain about De La Cruz's handling of a phone call: "[S]he was very rude, was not helpful and hung up on her, would not give her any answers." (Doc. 21, Ex. 2 at 34). Diaz also testified, "I had gotten a lot of complaints from residents about Ms. Marcy and complaints from the staff about Marcy's behavior. And another residential supervisor had just had an incident with her that same day [February 8] about the van runs." *Id.* at 35.

Third, Defendants assert that De La Cruz voluntarily resigned during the February 8 meeting. (Doc. 21, Ex. 2 at 37) ("[S]he was adamant that she wanted to resign."). Even if she had not voluntarily resigned, Defendants argue, her unprofessional conduct that afternoon would have caused Defendants to fire her. (Doc. 21 at 13).

Although based on disputed facts, Defendants have offered legitimate, nondiscriminatory reasons for De La Cruz's adverse employment actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment actions.

### C. Plaintiff's Evidence of Pretext

 The burden now shifts back to De La Cruz to offer evidence that Defendants' legitimate, nondiscriminatory reasons are a pretext for discrimination. To show pretext, a plaintiff "must affirmatively show that the employer's proffered reason is unworthy of credence." *Grimes v. Wal–Mart Stores Texas, L.L.C.*, 505 Fed. Appx. 376, 380 (5th Cir.2013). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999).

In response to Defendants' claim that De La Cruz was only temporarily filling the fulltime position, De La Cruz insists that Diaz actually hired her for the full-time position. (Doc. 27, Ex. 2 at 1). De La Cruz next asserts that, although Defendants admitted that notes should have been taken during her job interview and kept in her employee file, (Doc. 21, Ex. 2 at 31; Doc. 21, Ex. 4 at 9), no notes were produced during discovery. (Doc. 27 at 30). The notes may have been lost or misplaced, but, together with De La Cruz's claim that she was hired for the full-time position and then unlawfully demoted, the lack of interview notes may support a finding in her favor that she was in fact hired for the full-time position.

In response to Defendants' claim that De La Cruz was demoted because of the complaints against her, De La Cruz attempts to show pretext by explaining that the allegations against her were false. (Doc. 27 at 30). Defendants asserted that they had received complaints about De La Cruz's attitude and demeanor, (Doc. 21 at 12), and that De La Cruz was rude to an employer, *id.* at 6. Rather than proving the justifications are not true, De La Cruz offers her subjective belief that she was not rude: "The allegations against me were false. One allegation was that I was rude to Ms. Hartiman.... I was not rude.... I was also accused of being rude to residents, but I was never rude." (Doc. 27, Ex. 2 at 2). Her subjective belief that she was not rude is insufficient to prove pretext. "Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against." *Ceasar v. N. Star Steel Tex., Inc.* 69 F.Supp.2d 858, 866 (E.D.Tex.1999).

De La Cruz next asserts that, prior to February 8, she had not been notified of

any of the complaints against her. (Doc. 27 at 35). Diaz claims to have verbally addressed the complaints with De La Cruz but admits to not using the write-up form to document any disciplinary conversations with De La Cruz. (Doc. 21, Ex. 2 at 11–12).[2] De La Cruz claims that "Dr. Diaz actually hired Ms. De La Cruz for the full-time position and it was Mr. Salazar who wanted the male which necessitated the fabrication of events to justify the decision." (Doc. 27 at 34). The only two documented complaints against De La Cruz are dated February 8, the day she was demoted. (Doc. 21, Ex. 6 at 11, 21). Although not incriminating evidence, the suspicious timing of these documents, taken with reasonable inferences in favor of De La Cruz's claim that they were fabricated, could support a finding of discriminatory motive.

█ De La Cruz also points to the suspicious timing of her demotion, because Salazar told her in a meeting on February 2 he needed a male for the full-time position, and then a week later she was demoted. (Doc. 27 at 33). "A remark is considered probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker. . . . '[S]o long as remarks are not the only evidence of pretext, they are probative of discriminatory intent.'" *Phillips v. TXU Corp.*, 194 Fed.Appx. 221, 227–28 (5th Cir.2006) (quoting *Palasota v. Haggar Clothing, Co.*, 342 F.3d 569, 577 (5th Cir.2003)). De La Cruz and Salazar offer different versions of what was said in that meeting,[3] but, resolving doubts in favor of De La Cruz, the timing of this meeting is close enough to her adverse employment action for a reasonable factfinder to infer a discriminatory motive.

Finally, in response to Defendants' claim that De La Cruz voluntarily resigned, De La Cruz states in her sworn affidavit that she did not resign during the February 8 meeting. (Doc. 27, Ex. 1 at 3). That afternoon, she explains, Diaz asked her to sign a statement that she was voluntarily resigning, and she refused to sign because she was not resigning. *Id.* This disagreement led to the altercation between them. *Id.*

Considering De La Cruz's prima facie evidence together with her evidence of pretext, *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), De La Cruz has provided sufficient evidence, using reasonable inferences, to show a genuine dispute as to the material facts in her case. De La Cruz has demonstrated there are questions as to whether she was hired for the full-time position or only temporarily filling the spot, whether she was replaced by a male or female, and whether Defendants' legitimate, nondiscriminatory

---

**2.** Evidence that Diaz did not follow disciplinary procedures is not probative of discriminatory animus, *see Upshaw v. Dallas Heart Group*, 961 F.Supp. 997, 1002 (N.D.Tex. 1997), but the lack of documentary evidence supports De La Cruz's claim that she had not been notified of any complaints, which could support her claim that the complaints were a pretext.

**3.** De La Cruz testified that Salazar told her he would not pay her full-time benefits, without giving an explanation, and that he needed a male for the Resident Supervisor position. (Doc. 27, Ex. 1 at 2). Salazar testified, "I told her that she is a temporary employee and would not be qualified to get the benefits. . . . I explained to Ms. De La Cruz that our state standards require that we have both a male and a female on staff and that the position that was vacated by a male really needed to be filled by another male." (Doc. 21, Ex. 4 at 8).

reasons for her adverse employment actions were a pretext for discrimination. Because there are genuine issues of material fact, summary judgment is not appropriate.

**3. Qualified Immunity**

■■ Defendant Linda Diaz asserts a qualified immunity defense to De La Cruz's § 1983 claim. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The "clearly established law" inquiry focuses on whether, measured by an objective standard, a reasonable official would know that his conduct was illegal. *Matherne v. Wilson,* 851 F.2d 752, 756 (5th Cir.1988). The Supreme Court has recognized that in conducting this inquiry at the summary judgment stage, the plaintiff can no longer rest on the pleadings; rather, the court must look to all the evidence before it in the light most favorable to the plaintiff. *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). In so doing, the court must highlight evidence that, if interpreted in the light most favorable to the plaintiff, identifies conduct by the defendant that violated clearly established law. *Petta v. Rivera,* 133 F.3d 330, 333 (5th Cir.1998).

■ As discussed above, De La Cruz has presented evidence sufficient to raise a fact issue as to whether she was denied benefits, demoted, and terminated because of her gender. De La Cruz has shown, when interpreting the evidence in the light most favorable to her, that she is a member of a protected class, that she was qualified for the job of Resident Supervi-

sor, that she suffered several adverse employment actions, that she was replaced by a male, and that the legitimate, nondiscriminatory reasons offered by the Defendants are a pretext for discrimination. Defendant Diaz is not entitled to the defense of qualified immunity because, if the facts are as De La Cruz alleges, then Diaz's conduct violated clearly established federal law.

**III. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED.**

SO ORDERED.